In re Michael J. MULLALLY, Debtor.

Linda CARTER, Plaintiff,

v.

Michael J. MULLALLY, Defendant.

Bankruptcy No. 83 B 10074.
Adv. No. 83.A 2718.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 13, 1985.

Michael S. Grant of Newell & Grant, Ltd., Fox Lake, Ill., for plaintiff.

W. Elliott Dunn of Cooper & Cooper, Ltd., Waukegan, Ill., for defendant.

## Memorandum and Order

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter is before the court on the motions of both parties for summary judgment on Linda Carter's complaint objecting to the discharge of the debtor's obligations for child support. The debtor has moved for summary judgment on the ground the support obligation is not "in connection with a separation agreement, divorce decree or property settlement agreement". Plaintiff argues it is the underlying nature of the debt—child support—that is determinative. Summary judgment will be entered in favor of the plaintiff and against the debtor.

The minor child, Jamie Michelle Carter, ("Jamie") was born to plaintiff, Linda Carter, ("Linda") on April 5, 1977. On March 14, 1978, in a written instrument the debtor Michael Mullally admitted paternity of Jamie and agreed to pay Linda thirty dollars per week for her support. In consideration, Linda waived her right to sue or prosecute a claim for support and paternity against the debtor as a result of the child's birth. The debtor does not contest the execution of the agreement or his admission of paternity only its characterization as a child support agreement.

The relationship between Linda and the debtor ended approximately one week before the child was born. Linda moved to her parents' home after the child was born and began receiving public aid. The parties were never married.

At no time did the debtor fulfill his obligation to make support payments. Linda was advised by the Illinois Department of Public Aid that the agreement with the debtor pre-empted a paternity action by the state. (Ill.Rev.Stat. ch. 40 ¶ 1351 et seq.)

In 1981 Linda sued the debtor in the Circuit Court of Lake County, to enforce the support agreement. The case was set for trial on August 18, 1983. On August 17th, the debtor commenced this chapter 7 case and listed Linda as an unsecured creditor owed $26,520. Linda responded with the complaint objecting to the discharge of the debtor's obligations to support his daughter Jamie. The debtor received his discharge on January 6, 1984. This discharge excludes this proceeding.

This case is governed by Bankruptcy Code § 523(a)(5) as it read on August 17, 1981, the date of the commencement of this case. The amendments made by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 § 454(b)(1), 98 Stat. 333, 376 (1984), are prospective only. Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984); *See also Franklin v. State of New Mexico, Etc.*, 730 F.2d 86, 87 (10th Cir.1984).

Section 523(a)(5) provided in pertinent part:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement [.]

"In the past, Congress has shown great wisdom in making child support payments nondischargeable in bankruptcy". 130 Cong.Rec. S6094 (daily ed. May 21, 1984) (statement of Sen. Exon) The Bankruptcy

Act broadly excepted from discharge, among other things, liability "for maintenance or support of wife or child[.]" Bankruptcy Act § 17(a)(7), 11 U.S.C. § 35(a)(7) (repealed 1979). Section 523(a)(5) admittedly uses tighter language by excepting liabilities to a spouse, former spouse or child of the debtor, in connection with a divorce decree, property settlement or separation agreement. 11 U.S.C. § 523(a)(5). This resulted in a split of authority.

Some courts have taken the view that the language of § 523(a)(5) is essentially "uncomplicated, grammatically correct and clear to the reader. To be excepted from discharge ... the debt must arise from a separation agreement, divorce decree or property settlement." *In re Brown*, 43 B.R. 613, 614 (Bankr.M.D.Tenn 1984). On similar bases courts discharged support obligations arising under paternity judgments and decrees, *In re Brown*, 43 B.R. at 614–616; *In re Bruner*, 43 B.R. 143, 147–150 (Bankr.E.D.Mo. 1984); *In re Fenstermacher*, 31 B.R. 77, 78 (Bankr.D.Neb. 1983) *overruled In re Pierson*, 47 B.R. 258, 261 (Bankr.D.Neb. 1985), and support obligations owed to public welfare agencies.[1] *In re Marino*, 29 B.R. 797, 799–801 (N.D. Ind. 1983); *In re Richards*, 33 B.R. 56, 57–58 (Bankr.D.Or. 1983). Support was found for the proposition Congress intended to discharge such obligations in the legislative history of § 523(a)(5). *E.g., In re Bruner*, 43 B.R. at 148–149.

It can be stated with certitude that Jamie Michelle Carter is the debtor's child; that on March 14, 1978 he agreed to contribute thirty dollars per week to support his child; and that on August 17, 1983, he filed bankruptcy to circumvent his support obli-

gations. The court finds the remarks made to introduce the 1984 amendment[2] to Bankruptcy Code § 523(a)(5) telling: "Sadly, due to the high rate of divorce *and the increasing number of children born out of wedlock*, more and more children are living with only one of their natural parents. Many of these children are being deprived of support owed to them by their noncustodial parent. The number of parents who ignore their child support obligations is a national disgrace." 130 Cong.Rec. S6094 (daily ed. May 21, 1984) (statement of Sen. Exon) (emphasis added).

This court respectfully disagrees with a formalistic reading of the statute. If this court were to accept the analysis of the foregoing cases and reach the result urged by the debtor, it would mean Congress intended to preserve the support obligations of married fathers while allowing unmarried fathers, such as the debtor, to avoid theirs by filing bankruptcy. *See In re Balthazor*, 36 B.R. 656, 658 (Bankr.E.D. Wis. 1984). The statutory language does suggest the support obligations must result from the dissolution of a marriage of the debtor to be nondischargeable. Yet such a construction of the statute results in a discriminatory treatment of illegitimate children that may be so unjustifiable as to offend the equal protection standards imposed upon the federal government by the Due Process Clause of the Fifth Amendment. *See Schlesinger v. Ballard*, 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 573 n. 3, 42 L.Ed.2d 610 (1975); *and Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); *see also Matter of Pierson*, 47 B.R. 258, 260, 260–261 (Bankr.D.Neb. 1985); *In*

---

1. Congress remedied this result by the enactment of § 2334(b) of Title XXIII of the Omnibus Budget Reconciliation Act of 1981, Pub. L.No. 97–35, 95 Stat. 357, 863, which amended Bankruptcy Code § 523(a)(5)(A) to render nondischargeable support obligations assigned to a state under § 402(a)(26) of the Social Security Act. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 93–353, § 454(b)(2), 98 Stat. 333, 376 (1984), further excepted any such debt assigned to the Federal Government, a state or any political subdivision thereof.

2. The amendment was enacted on July 10, 1984 as Pub.L. No. 98–353, § 454(b), 98 Stat. 333, 376 (1984), to clarify the provisions regarding the discharge of child support obligation. 130 Cong.Rec. S6094 (daily ed. May 21, 1984). The amendment prevents discharge of an obligation in connection with a court order or one that has been assigned to the federal government, a state or municipality. *See* current 11 U.S.C. § 523(a)(5).

re Balthazor, 36 B.R. at 658; In re Cain, 29 B.R. 591, 595 (Bankr.N.D.Ind. 1983).

The analysis of cases such as In re Cain, 29 B.R. 591 (Bankr.N.D.Ind. 1983) is preferable. Section 523(a)(5) as applicable to this case does not address the significant problem of children born out of wedlock.[3] Congress intended to draft a statute that would render nondischargeable legitimate debts actually in the nature of alimony, maintenance or child support. In re Balthazor, 36 B.R. at 658; In re Mojica, 30 B.R. 925, 930 (Bankr.E.D.N.Y. 1983); In re Cain 29 B.R. at 595; see also 11 U.S.C. § 523(a)(5)(B). The better view is to construe the statute to avoid results not contemplated by the legislature and include paternity obligations. See Matter of Pierson, 47 B.R. at 260; In re Balthazor, 36 B.R. at 657–658; In re Cain, 29 B.R. at 594–596.

Plaintiff in this case waived not only her right, but the right of the state, to seek the recourse against the debtor provided by the Illinois Paternity Act, Ill.Rev.Stat. ch. 40 ¶ 1351 et.seq. In exchange the debtor was to contribute to the support of his illegitimate child. He has not done so and now attempts to use the bankruptcy court as a shield against five years of arrearages. The Supreme Court long ago cautioned the courts against sanctioning this type of conduct. "The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and child of support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce." Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904).

Granted, at common law one who fathered an illegitimate child had no duty to provide support. Ehorn v. Podraza, 51 Ill.App.3d 816, 817, 9 Ill.Dec. 866, 868, 367 N.E.2d 300, 302 (1977). Yet this court is mindful notwithstanding the striking contrast between the common law and present day statutes, "[t]he lot of a child born out of wedlock, [and] not adopted or legitimatized, is a hard one." Zepeda v. Zepeda, 41 Ill.App.2d 240, 255, 190 N.E.2d 849, 856 (1963) cert. denied., 379 U.S. 945, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964). A father's obligation to support his child begins at birth and continues during minority. Huckaby v. Huckaby, 75 Ill.App.3d 195, 198, 30 Ill. Dec. 909, 911, 393 N.E.2d 1256, 1259, (1979); see also Ill.Rev.Stat. ch 40 ¶ 1352. Compare Ill.Rev.Stat. ch 40 ¶ 513 (Marriage and Dissolution Act provision for education and maintenance of legitimate child after majority). The concern for illegitimate children is evidenced by the support provisions of the Illinois Paternity Act. They are designed to convert the father's moral obligation of support into a legal one; see that illegitimate children are provided the same care as legitimate children; and prevent illegitimate children from becoming public charges. Dornfeld v. Julian, 104 Ill.2d 261, 266, 84 Ill.Dec. 471, 473, 472 N.E.2d 431, 433 (1984); and Zepeda v. Zepeda, 41 Ill.App.2d at 257, 190 N.E.2d at 857.

The relationship of the debtor to Jamie Michelle Carter is a family one, despite the absence of marriage vows between mother and father. In re Cain, 29 B.R. at 596; See also Huckaby v. Huckaby 75 Ill.App.3d at 199, 30 Ill.Dec. at 911, 393 N.E.2d at 1259. Plaintiff's claim for support is one which transcends any contractual obligation, Huckaby v. Huckaby, 75 Ill.App.3d at 199, 30 Ill.Dec. at 912, 393 N.E.2d at 1260 quoting Nelson v. Nelson, 340 Ill. App. 463, 468, 92 N.E.2d 534, 536 (1950), and [f]amily support obligations have traditionally been considered a duty, not a debt, and as such exempt from discharge." In re Cain, 29 B.R. at 594. The debtor may not use his bankruptcy filing to deflect his duty to support his illegitimate child.

The court notes that the child support obligations at issue are the payments the

---

**3.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 93–353, § 454(b)(1), 98 Stat. 333, 376 (1984), amended Bankruptcy Code § 523(a)(5) to include maintenance and support obligations arising in connection with an order of a court of record. This would preclude discharge of child support obligations incident to paternity judgments or decrees. See also 130 Cong.Rec. S6094 (daily ed. May 21, 1984) (statement of Sen. Exon).

debtor failed to make before the petition was filed. Chapter 7 discharges the debtor from all debts that arose before the date of the order for relief. 11 U.S.C. § 727(b). Therefore, in no event would the debtor's future support obligation be dischargeable. *See In re Bruner,* 43 B.R. 143, 149–150 (Bankr.E.D.Mo. 1984). Further, the debtor has been discharged and the case closed. Therefore, the automatic stay has been lifted and plaintiff may proceed with her action against the debtor in Lake County Circuit Court. 11 U.S.C. § 362(c). The indebtedness determined to be owing by the Circuit Court and any future indebtedness is nondischargeable.

IT IS THEREFORE ORDERED that the motion of the debtor, Michael J. Mullally, for summary judgment on the complaint of plaintiff, Linda Carter, is denied and the motion of plaintiff, Linda Carter, for summary judgment is granted and summary judgment is entered in favor of plaintiff, Linda Carter, and against defendant, Michael J. Mullally.

IT IS FURTHER ORDERED that any indebtedness owed by the debtor, Michael J. Mullally, to the plaintiff, Linda Carter, for support of the minor child, Jamie Michelle Carter, is non-dischargeable.